UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RAYMOND HARDIN, et al.,

          Plaintiffs,

v.

BANK OF AMERICA, N.A.,

          Defendant.

Case No. 2:22-cv-10023

HONORABLE STEPHEN J. MURPHY, III

## OPINION AND ORDER
## GRANTING MOTION TO DISMISS [10]

Plaintiffs sued Defendant Bank of America for several claims related to the way Defendant administered unemployment benefits in Michigan. ECF 8. Defendant moved to dismiss the complaint for failure to state a claim. ECF 10. The parties briefed the motion. ECF 14; 15.[1] For the following reasons, the Court will grant the motion to dismiss.

### BACKGROUND

Michigan's unemployment insurance agency exclusively worked with Defendant to administer unemployment insurance during the COVID-19 pandemic. ECF 8, PgID 82–83. Defendant issued unemployment insurance through prepaid debit cards linked to individual depository accounts. *Id.* at 77. The cardholder

---

[1] Based on the parties' briefing, the Court will resolve the motion on the briefs without a hearing. *See* Fed. R. Civ. P. 78(b); E.D. Mich. L.R. 7.1(f)(2).

agreement governed the parties' relationship. *Id.* at 79; *see* ECF 10-2 (cardholder agreement).

For any unauthorized transactions, Defendant's liability was limited to "reimbursing [Plaintiffs] the amount of [their] loss up to the face amount of any unauthorized card transaction." ECF 10-2, PgID 168. "A transaction is considered 'unauthorized' if it is initiated by someone other than you (the cardholder) without your actual or apparent authority, and you receive no benefit from the transaction." *Id.* "A transaction is *not* considered 'unauthorized' if . . . [Defendant] conclude[s] that the facts and circumstances do not reasonably support a claim of unauthorized use." *Id.* (emphasis added).

To report an unauthorized transaction, a consumer had to tell Defendant the "name and Card Account number," "[w]hy [he] believe[s] there is an error, and the dollar amount involved," and "[a]pproximately when the error took place." *Id.* at 167. Any oral notice from the consumer must also be sent "in writing within [ten] business days." *Id.* Once notice is provided, Defendant must "determine whether an error occurred within [ten] business days." *Id.*

For account freezes, the cardholder agreement allowed Defendant to freeze an account "pending an investigation" if it "suspect[s] irregular, unauthorized, or unlawful activities . . . involved with [the] Account." *Id.* at 168.

Plaintiffs Raymond Hardin, Shantia James, and Ashley Simpson all received the prepaid debit cards from Defendant as their unemployment insurance payments. ECF 8, PgID 81–82.

Hardin alleged that he experienced a fraudulent transaction on his account in December 2020. *Id.* at 98. When he discovered the fraud, he "reported the fraud to [Defendant] via phone." *Id.* at 99. Defendant asked him to verify his identity before it could help him. *Id.* Defendant meanwhile froze his account and did not credit his account for the allegedly fraudulent transaction. *Id.*

James alleged that she experienced fraud between July and October 2020. *Id.* She reported the fraud to Defendant, but Defendant told her that she would need to contact the unemployment agency because an unauthorized person had "gained access to the card and was using the unemployment benefits." *Id.* During that time, Defendant froze her account for nearly ten months. *Id.* at 100.

Simpson alleged that her account was frozen based on suspected fraud in December 2020. *Id.* But no fraud occurred on her account. *Id.* She reported the account freeze to Defendant, but Defendant told her that she would have to contact someone else to unfreeze her account. *Id.*

In December 2021, Plaintiffs sued Defendant for violating the Electronic Fund Transfers Act ("EFTA"). *Id.* at 108–12; *see also* ECF 1-2 (original complaint). Plaintiffs also raised breach of contract, ECF 8, PgID 117–18, breach of implied contract, *id.* at 119–20, and breach of implied covenant of good faith and fair dealing claims, *id.* at 120–22. Last, Plaintiffs asserted negligence, *id.* at 112–15, and negligent hiring claims, *id.* at 115–17.

## LEGAL STANDARD

The Court may grant a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) if the complaint fails to allege facts "sufficient 'to raise a right to relief above the speculative level,' and to 'state a claim to relief that is plausible on its face.'" *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). The Court views the complaint in the light most favorable to the plaintiff, presumes the truth of all well-pleaded factual assertions, and draws every reasonable inference in the nonmoving party's favor. *Bassett*, 528 F.3d at 430.

But the Court will not presume the truth of legal conclusions in the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If "a cause of action fails as a matter of law, regardless of whether the plaintiff's factual allegations are true or not," then the Court must dismiss. *Winnett v. Caterpillar, Inc.*, 553 F.3d 1000, 1005 (6th Cir. 2009).

In a Rule 12(b)(6) motion, courts can only "consider the [c]omplaint and any exhibits attached thereto . . . [and] items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the [c]omplaint and are central to the claims contained therein." *Bassett*, 528 F.3d at 430 (citation omitted); *see also Decoration Design Sols., Inc. v. Amcor Rigid Plastics USA, Inc.*, 553 F. Supp. 3d 424, 427 (E.D. Mich. 2021) (Murphy, J.). And courts may grant a Rule 12(b)(6) motion based on an affirmative defense when the limitations period has expired so long as there are "no sets of facts that would entitle [the

4

plaintiff] to relief." *Duncan v. Leeds*, 742 F.2d 989, 991 (6th Cir. 1984) (emphasis omitted) (citation omitted).

## DISCUSSION

The Court will first dismiss the EFTA claim. After, the Court will dismiss the contract-related claims and the negligence claims.

I.  <u>EFTA Claim</u>

To start, James's EFTA claim is time-barred. Plaintiffs must bring an EFTA claim "within one year from the date of the occurrence of the violation." 15 U.S.C. § 1693m(g). In other words, the limitations period started at "the moment of transfer." *Wike v. Vertrue, Inc.*, 566 F.3d 590, 593 (6th Cir. 2009). James alleged the fraudulent transactions occurred between July 2020 and October 2020. ECF 8, PgID 99. Plaintiffs did not file the complaint until December 2021. ECF 1-2. James's EFTA claim is therefore untimely.

James did not respond to the limitations period argument in the response brief. *See* ECF 14, PgID 182–86. When a plaintiff does not respond to a defendant's argument, the plaintiff waives any opposition to the argument. *Humphrey v. U.S. Att'y Gen.'s Office*, 279 F. App'x 328, 331 (6th Cir. 2008) (stating that when a plaintiff fails to respond to a defendant's argument, any opposition is waived) (citations omitted). The Court will therefore dismiss James' EFTA claim.

The remaining EFTA claims from Hardin and Simpson stem from Defendant's errors related to unauthorized transactions. ECF 8, PgID 108–12; *see also id.* at 108 ("Plaintiffs and Class Members provided notice to [Defendant] within 60 days after

5

[Defendant] sent a period statement reflecting an unauthorized transaction (which is an 'error' under Regulation E) consistent with 15 U.S.C. § 1693f and 12 C.F.R. § 1005.11."). Yet Plaintiffs appear to respond that the EFTA claims also involve Defendant's errors over their "request for additional information or clarification concerning an electronic fund transfer or any documentation required by [the EFTA]." 15 U.S.C. § 1693f(f)(6); *see also* ECF 14, PgID 184–86. Because those allegations were not in the amended complaint, the Court cannot consider them. *See Bassett*, 528 F.3d at 430.

Even if the Court could consider those allegations as pleaded in the amended complaint, requests for additional information or clarification apply only for requests "concerning an electronic fund transfer." 12 C.F.R. § 1005.11(a)(1)(vii). The defined requests do not include "routine inquir[ies] about the consumer's account balance," among other "recordkeeping" requests. 12 C.F.R. § 1005.11(a)(2). Neither Simpson nor Hardin requested information or clarification about an electronic funds transfer. ECF 8, PgID 98–101. Simpson did not even allege that her electronic funds were transferred. *Id.* at 100–01. In the end, the Court will assess the motion to dismiss as to only the claims from Simpson and Hardin that stem from Defendant's errors related to unauthorized transactions.

For Simpson, the Court will dismiss her EFTA claim because she never experienced fraud. ECF 8, PgID 100 ("[F]raud never occurred on her account.") Instead, Simpson alleged only that her account "freeze was unwarranted." *Id.* And she alleged that because of the freeze, Defendant violated 15 U.S.C. § 1693f and

12 C.F.R. § 1005.11. *Id.* at 108–09. But the EFTA does not regulate account freezes; it regulates electronic funds transfers. *Wike*, 566 F.3d at 592 ("The statute covers a wide range of electronic money transfers . . . and subjects them to a litany of procedural requirements designed to protect consumers from transactions made in error or without their consent.") (citation omitted). And the regulation does not define account freezes as an "error" covered under the EFTA. *See* 12 C.F.R. § 1005.11(a)(1).

In any event, Simpson failed to respond to Defendant's argument that the EFTA does not regulate account freezes. *See* ECF 14, PgID 183–86; *see also* ECF 10, PgID 145–46 (Defendant's motion to dismiss). As a result, her argument is not only waived but fails on the merits as well. The Court will thus dismiss Simpson's EFTA claim. *Humphrey*, 279 F. App'x at 331.

Hardin's EFTA claim fails because he failed to plausibly plead that he complied with the notification requirements. The EFTA requires Defendant to investigate alleged errors when a consumer notifies Defendant that an alleged error occurred. 15 U.S.C. § 1693f(a)(3). Consumers have specific notice requirements that they must comply with before Defendant needs to investigate. § 1693f(a); 12 C.F.R. § 1005.11(b). First, the consumer must notify Defendant in sixty days about the alleged error. 12 C.F.R. § 1005.11(b)(1)(i). Second, the notification must "[e]nable[] [Defendant] to identify the consumer's name and account number." 12 C.F.R. § 1005.11(b)(1)(ii). And third, the notification must "[i]ndicate[] why the consumer believes an error exists and includes to the extent possible the type, date, and amount of the error." § 1005.11(b)(1)(iii).

Hardin flouted the notice requirements. For one, he simply "reported the fraud to [Defendant]." ECF 8, PgID 99. In turn, Defendant asked him to verify his identity before they could investigate. *Id.* But Hardin did not comply. *See id.* Put simply, a consumer who fails to provide identifying information flouts 12 C.F.R. § 1005.11(b)(1)(ii). For another, the amended complaint did not otherwise suggest that Hardin "informed Defendant of the type of error that triggers Defendant's duties under the EFTA or that []he notified Defendant with the specificity that triggers those duties." *Ghalchi v. U.S. Bank, N.A.*, No. CV 14-6619, 2015 WL 12655402, at *8 (C.D. Cal. Jan. 8, 2015); *see* ECF 8, PgID 98–99.

In response, Hardin pointed to no specific allegation that suggested he had provided proper notice. *See* ECF 14, PgID 182–83. Rather, Hardin relied on others' allegations to suggest he satisfied the notice requirements. *Id.* But sufficient allegations for one plaintiff do not plausibly suggest that Hardin's EFTA claims survive dismissal. In sum, because Plaintiffs' claims each fail for their own reasons, the Court will dismiss the EFTA claims against Defendant.

II. Contract-Related Claims

North Carolina law governs the contract. ECF 10-2, PgID 167. Plaintiffs, however, cited no North Carolina contract law in the response brief. ECF 14, PgID 186–90 (citing Sixth Circuit and Michigan Appellate Court cases). Plaintiffs also provided no reasoning for why the Court should not apply North Carolina law given the choice-of-law provision in the contract. *See id.* Still, the Court will apply North Carolina law and dismiss each contract-related claim in turn.

8

### A. *Breach of Contract*

A contract is interpreted "as a whole" and "[a]ll parts of the contract will be given effect if possible." *S. Seeding Serv., Inc. v. W.C. Eng., Inc.*, 719 S.E. 2d. 211, 215 (N.C. Ct. App. 2011) (quotation omitted). "Contracts are interpreted according to the intent of the parties. The intent of the parties is determined by examining the plain language of the contract." *Liptrap v. Coyne*, 675 S.E. 2d. 693, 696 (N.C. Ct. App. 2009) (quotation omitted). "[I]f the meaning of the [contract] is clear and only one reasonable interpretation exists, the courts must enforce the contract as written." *Gaston Cnty. Dyeing Mach. Co. v. Northfield Ins. Co.*, 524 S.E.2d 558, 563 (N.C. 2000) (quotation omitted). "The elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of that contract." *Poor v. Hill*, 530 S.E.2d 838, 843 (N.C. Ct. App. 2000) (citing *Jackson v. Cal. Hardwood Co.*, 463 S.E.2d 571, 572 (N.C. 1995)).

Plaintiffs alleged three groups of breaches. The first group stemmed from how Defendant handled unauthorized fraudulent transactions. ECF 8, PgID 118 ¶ 118(a)–(d). Defendant, for example, failed to "timely and reasonably investigate and resolve their fraud claims" and "reimburse them for [the] unauthorized transactions." *Id.* The second group of breach allegations asserted that Defendant improperly froze their accounts. *Id.* ¶ 118(e)–(f). And the third group alleged that Defendant failed to "make funds available to" Plaintiffs according to the contract. *Id.* ¶ 118(g)–(h). The Court will dismiss each alleged breach.

9

### 1. *Unauthorized transactions*

Defendant's liability for unauthorized transactions is limited to "reimbursing [Plaintiffs] the amount of [their] loss up to the face amount of any unauthorized card transaction." ECF 10-2, PgID 167. "A transaction is considered 'unauthorized' if it is initiated by someone other than you (the cardholder) without your actual or apparent authority, and you receive no benefit from the transaction." *Id.* at 168. "A transaction is *not* considered 'unauthorized' if . . . [Defendant] conclude[s] that the facts and circumstances do not reasonably support a claim of unauthorized use." *Id.* (emphasis added).

Simpson's claim for breach of contract fails because she alleged that her account did not have an unauthorized transaction. ECF 8, PgID 100 ("[F]raud never occurred."). Without an unauthorized transaction, Defendant could not breach its duties to reimburse her for an unauthorized transaction.

And the claims from Hardin and James fail for two reasons. One, Hardin and James never alleged that they complied with the contract's requirements to provide notice that would trigger Defendant's duties to investigate and reimburse a potential unauthorized transaction. *Id.* at 98–100. To report an account error, such as an unauthorized transaction, a consumer would have to tell Defendant his "name and Card Account number," "[w]hy [he] believe[s] there is an error and the dollar amount involved," and "[a]pproximately when the error took place." ECF 10-2, PgID 167. And a notice sent "in writing within [ten] business days" must accompany any oral notice

10

from the consumer. *Id.* Once notice is provided, Defendant must "determine whether an error occurred within [ten] business days." *Id.*

Hardin neither followed up in writing nor provided the necessary information to Defendant so that it could verify his identity. *See* ECF 8, PgID 99. And James reported the alleged unauthorized transaction "via phone" but she never detailed whether she followed up in writing. *Id.* at 99–100. In either case, Hardin and James failed to plausibly allege that they complied with the contract and triggered Defendant's duty to investigate.

Two, even if Hardin and James did provide proper notice, they never alleged that Defendant unreasonably "conclude[d] that the facts and circumstances" did not "support a claim of unauthorized use." ECF 10-2, PgID 168; *see* ECF 8, PgID 99–100. Put differently, no allegations show that Defendant, after an investigation, violated its duty to reimburse. In either case, the breach of contract claims based on unauthorized transactions fail for Hardin and James. The Court will thus dismiss the breach of contract claims related to the unauthorized transactions.

### 2. *Account freezing*

The contract allows Defendant to freeze an account "pending an investigation" if it "suspect[s] irregular, unauthorized, or unlawful activities . . . involved with [the] Account." ECF 10-2, PgID 168. Plaintiffs suggested that Defendant breached this provision because it lacked "a reasonable basis for suspecting irregular, unauthorized, or unlawful activities in the Account[s]." ECF 8, PgID 118 ¶ 118(e). But the contract included no "reasonable basis" requirement to freeze the account.

11

*See* ECF 10-2, PgID 168. All Defendant needed was a *suspicion*. *Id*. Even Simpson alleged that Defendant froze her account because it "suspected fraud." ECF 8, PgID 100. And although James and Hardin did not explain why Defendant froze their account, they alleged that their accounts had suffered from actual fraud. *Id*. at 98–100. In short, the Court can only plausibly infer that Defendant froze the accounts because it had suspected fraud, and that suspicion gave it the right to freeze the accounts. ECF 10-2, PgID 168.

Plaintiffs also alleged that Defendant froze their accounts for too long—"beyond the length of time necessary for a reasonable investigation." ECF 8, PgID 118 ¶ 118(e). But the contract contains no such limit for how long Defendant can freeze accounts. *See* ECF 10-2, PgID 167–68. The contract limits Defendant to freezing the account only "pending an investigation." *Id*. at 168. No Plaintiff alleged that their accounts were frozen beyond when Defendant completed any investigation. *See* ECF 8, PgID 98–101. At bottom, Plaintiffs failed to allege that Defendant breached the contract by freezing the accounts. The Court will therefore dismiss the breach of contract claims related to account freezing.

### 3. *Making funds available*

The contract does not require Defendant to make funds available to Plaintiffs when their accounts are frozen. *See* ECF 10-2, PgID 167–68. Still, Plaintiffs pointed to the contract's second section. ECF 14, PgID 187 ("[Defendant] further violated Section 2 . . . .") (citation omitted). Yet section two expressly authorizes account freezes. ECF 10-2, PgID 168. In brief, without showing that Defendant breached a

12

provision in the contract, the Court will dismiss the breach of contract claims that stem from Defendant "failing to make funds available to [Plaintiffs]." ECF 8, PgID 118 ¶ 118(g)–(h).

      B.    *Breach of Implied Covenant of Good Faith and Fair Dealing*

"In every contract there is an implied covenant of good faith and fair dealing." *Williams v. Craft Dev., LLC*, 682 S.E.2d 719, 723 (N.C. Ct. App. 2009) (quotation and citation omitted). But the covenant cannot contradict the express terms of a contract. *Rich Food Servs., Inc. v. Rich Plan Corp.*, 98 F. App'x 206, 211 (4th Cir. 2004) (citations omitted). To that end, when a breach of contract claim is "part and parcel" of a breach of good faith claim, the two claims are the same. *Lord of Shalford v. Shelley's Jewelry, Inc.*, 127 F. Supp. 2d 779, 787 (W.D.N.C. 2000) (citations omitted). Because the breach of implied covenant claim centers on how Defendant investigated unauthorized transactions and froze accounts, those claims are the same as the breach of contract claims. *Compare* ECF 8, PgID 117–18 *and* ECF 10-2, PgID 167, *with* ECF 8, PgID 120–22. As a result, the Court will dismiss the implied covenant claim as duplicative.

      C.    *Breach of Implied Contract*

The implied contract claim fails because the parties had an express contract governing their relationship. "There can be no implied contract where there is an express contract between the parties in reference to the same subject matter." *Charlotte Motor Speedway, Inc. v. Tindall Corp.*, 672 S.E.2d 691, 692 (N.C. Ct. App. 2009) (quoting *Greene v. Charlotte Chem. Labs., Inc.*, 120 S.E.2d 82, 89 (N.C. 1961)).

13

Here, the subject matter alleged by Plaintiffs to sustain the implied contract (securing accounts against unauthorized transactions and investigate any unauthorized transaction) is governed by an express contract. *Compare* ECF 8, PgID 117–18 *and* ECF 10-2, PgID 167, *with* ECF 8, PgID 119–20. The claim therefore fails, and the Court will dismiss it.

III.   Negligence Claims

The negligent hiring and supervision claims fail because Plaintiff failed to respond to Defendant's motion to dismiss those claims. *See* ECF 14, PgID 190–92; ECF 10, PgID 162–63 (Defendant's motion to dismiss). Thus, without a response, the claims are waived. *Humphrey*, 279 F. App'x at 331.

The negligence claims fail for similar reasons. To establish a prima facie case of negligence, a plaintiff must prove four elements: duty, breach of that duty, causation, and damages. *Fultz v. Union-Com. Assocs.*, 470 Mich. 460, 463 (2004). Defendant moved to dismiss the negligence claims because even if it were to breach a duty owed to Plaintiffs, it did not cause Plaintiffs' injuries. ECF 10, PgID 160–61. Plaintiffs failed to respond to the causation argument. ECF 14, PgID 190–92. Without a response, those claims are waived. *Humphrey*, 279 F. App'x at 331.

Last, negligence per se cannot save Plaintiffs' negligence claims from dismissal. "[N]egligence per se is not an independent cause of action, but rather a burden-shifting mechanism within the theory of negligence." *Abnet v. Coca-Cola Co.*, 786 F. Supp. 2d 1341, 1345 (W.D. Mich. 2011) (collecting Michigan cases). In all, the Court will dismiss the negligence claims.

14

# CONCLUSION

The Court will grant the motion to dismiss. Although Plaintiffs asked the Court to grant leave to amend, ECF 14, PgID 192–93, the Court will deny the request for three reasons.

First, Plaintiffs already amended the complaint. ECF 8. Because Plaintiffs should have amended the complaint then to correct pleading deficiencies, allowing another amendment now will not help cure any pleading deficiencies.

Second, Plaintiffs cited only Michigan case law to support granting leave to amend the complaint. ECF 14, PgID 192–93 (citation omitted). Simply put, Michigan procedural law is irrelevant to whether the Court grants leave to amend under the Federal Rules of Civil Procedure. *See Gasperini v. Ctr. for Humans., Inc.*, 518 U.S. 415, 427 (1996) (quoting *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)).

Third, based on the information before the Court, an amendment is futile. Local Rule 15.1 requires that "[a] party who moves to amend a pleading shall attach the proposed amended pleading to the motion." Plaintiffs failed to attach a proposed amendment to their response. *See generally* ECF 14. Although failure to comply with Local Rule 15.1 "is not a ground for denial of the motion," granting leave to amend will be no more than a fool's errand. After all, Plaintiffs have not even suggested that they can assert any allegations that will remedy the significant pleading shortfalls. *See Crosby v. Twitter, Inc.*, 921 F.3d 617, 628 (6th Cir. 2019) (denying leave to amend when the plaintiffs "included only a cursory request at the end of their opposition to [d]efendant's motion to dismiss"); *Ky. Mist Moonshine, Inc., v. Univ. of Ky.*, 192 F.

Supp. 3d 772, 791 (E.D. Ky. 2016) (denying leave to amend because the amendment would not resolve the sovereign immunity question).

Besides, "[w]ithout viewing the proposed amendment, it [is] impossible for the [] [C]ourt to determine whether leave to amend should [be] granted." *Spadafore v. Gardner*, 330 F.3d 849, 853 (6th Cir. 2003); s*ee Robbins v. New Cingular Wireless PCS, LLC*, 854 F.3d 315, 322 (6th Cir. 2017) (collecting cases) (denying leave to amend when "plaintiffs have barely attempted to follow the proper amendment procedures"); *Begala v. PNC Bank, Ohio, Nat. Ass'n*, 214 F.3d 776, 784 (6th Cir. 2000) ("What plaintiffs may have stated, almost as an aside . . . in opposition to the defendant's motion to dismiss is . . . not a motion to amend"). The Court will therefore deny leave to amend.

## ORDER

**WHEREFORE**, it is hereby **ORDERED** that the motion to dismiss [10] is **GRANTED**.

This is a final order that closes the case.

**SO ORDERED.**

                                    s/ Stephen J. Murphy, III
                                    STEPHEN J. MURPHY, III
                                    United States District Judge

Dated: August 18, 2022

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on August 18, 2022, by electronic and/or ordinary mail.

                                    s/ David P. Parker
                                    Case Manager